UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-22606-CIV-ALTONAGA/O'Sullivan

**MELBA MOREIRA**, *et al.*,

    Plaintiffs,

v.

**AMERICLEAN BUILDING
MAINTENANCE, INC.**, *et al.*,

    Defendants.
    _____/

# ORDER

**THIS CAUSE** came before the Court upon two motions for partial summary judgment. Plaintiffs, Melba Moreira ("Melba"), Raul Moreira ("Raul"), and Rafaela Leonor Ruiz ("Rafaela") (collectively, "Plaintiffs"), filed a Motion . . . ("Plaintiffs' Motion") [ECF No. 51] on January 20, 2016. Defendants, Americlean Building Maintenance, Inc. ("Americlean"), and owner James S. Johnson ("Johnson") (collectively, "Defendants"), filed a Response . . . ("Defendants' Response") [ECF No. 53] on February 8, 2016; Plaintiffs filed a Reply . . . ("Plaintiffs' Reply") [ECF No. 63] on February 12, 2016. Additionally, Johnson filed a Motion . . . ("Johnson's Motion") [ECF No. 50] on January 20, 2016. Plaintiffs filed a Response . . . ("Plaintiffs' Response") [ECF No. 54] on February 8, 2016; Johnson filed a Reply . . . ("Johnson's Reply") [ECF No. 64] on February 18, 2016. The Court has carefully considered the parties' written submissions,[1] the record, and applicable law.

---

[1] Plaintiffs also filed a Statement of Material Facts . . . ("Plaintiffs' SMF") [ECF No. 52]; in response, Defendants filed a Statement of Material Facts . . . ("Defendants' SMF Response") [ECF No. 53-1]). Johnson included a Statement of Material Undisputed Facts ("Johnson's SMF") within the Johnson Motion (*see* [ECF No. 50] 1–3); and Plaintiffs filed a Response . . . ("Plaintiffs' SMF Response") within Plaintiffs' Response (*see* [ECF No. 54] 2–3).

I.  BACKGROUND

This case arises out of an employment dispute. (*See generally* Amended Complaint . . . ("Amended Complaint") [ECF No. 28]). Melba was hired by Americlean to perform cleaning services in a building in West Palm Beach, Florida. (*See* Pls.' SMF ¶ 1). Raul and Rafaela, Melba's husband and sister, assisted Melba in the performance of her cleaning services for Americlean in exchange for a portion of Melba's Americlean earnings, but never applied to work for Americlean themselves. (*See* Johnson's SMF ¶¶ 5, 7). Johnson owns Americlean (*see id.* ¶ 8), but does not oversee its day-to-day operations or directly supervise employees (*see id.* ¶ 10). Instead, Johnson delegates that work to non-party Patricio Arreaga ("Arreaga"), who hired Melba. (*See id.* ¶ 12). Plaintiffs bring two claims against Defendants, alleging minimum wage violations under both state law and the federal Fair Labor Standards Act, 29 U.S.C. section 201 *et seq.* ("FLSA"). (*See generally* Am. Compl.).

II.  LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (internal quotation marks omitted) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Channa Imps., Inc. v. Hybur, Ltd.*, Case No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At summary

judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the nonmoving party. *See Allen*, 121 F.3d at 646.

### III. ANALYSIS

Plaintiffs move for partial summary judgment on the issues of: 1) whether all three Plaintiffs are considered employees under the FLSA; and 2) whether Defendants may assert the doctrine of unclean hands as an affirmative defense. (*See generally* Pls.' Mot.). Johnson moves for partial summary judgment on the issue of whether he may be considered an employer under the FLSA in his individual capacity. (*See generally* Johnson's Mot.).

**A. Plaintiffs' Motion**

According to Plaintiffs, the undisputed facts show they were Americlean employees as defined by the FLSA. (*See* Pls.' Mot. 2–5). Whether a plaintiff is an employee is a question of law, and can be determinative because the FLSA does not protect individuals in the absence of a qualifying employer-employee relationship. *See Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 841 F. Supp. 2d 1274, 1277–78 (S.D. Fla. 2012). To determine whether a plaintiff is an employee, courts apply a wide-ranging "economic reality" test that considers the degree of actual and potential control of the purported employer over the purported employee. *See id.* at 1278; *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).

Plaintiffs argue they were all employees because they do not own any of the equipment or supplies used, worked for Defendants' benefit, were paid by Defendants, and were supervised and disciplined by Defendants' supervising employees. (*See* Pls.' Mot. 4–5). Defendants concede Melba is an employee. (*See* Defs.' Resp. 3). Yet Defendants dispute Plaintiffs' assertions regarding Raul and Rafaela, who Defendants argue neither applied to, nor were hired

or paid by, Americlean (*see id.* 3–8), and whose assistance to Melba was even unknown to Defendants (*see id.* 7). Defendants assert if Raul and Rafaela were indirectly providing cleaning services for Americlean, it is because Melba asked them to work for her, and it is only Melba who promised to — and did — pay Raul and Rafaela. (*See id.* 7–8).

In their Reply, Plaintiffs argue Defendants have made conflicting representations "that evidence a sham." (Pls.' Reply 5). For example, Plaintiffs fault Arreaga for saying he had no knowledge Raul and Rafaela were providing cleaning services at the building when a security sign-in sheet shows Raul and Rafaela signed in many times. (*See id.*; Ex. [ECF No. 63-1]). Plaintiffs fail to establish Arreaga has ever seen the building's internal security sign-in sheets, which are not Americlean documents. Plaintiffs also argue Defendants' potentially contradictory statements about Melba's employment status are more than a question of labels or semantics (*see* Pls.' Reply 4–5), but none of these arguments negates the existence of a genuine dispute of material fact as to whether Raul and Rafaela were employees. No amount of uncertainty or contradiction regarding Melba's employment status obviates this genuine dispute of material fact. Therefore, on this issue, Plaintiffs' Motion is granted only as to Melba's undisputed status.

As for the unclean hands affirmative defense, Defendants fail to mention this argument in their Response. Therefore, Plaintiffs' Motion is granted as to this issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 332 n.3 (1986) ("Summary judgment should be granted if the nonmoving party fails to respond.").

**B. Johnson's Motion**

Johnson argues he cannot personally be liable under the FLSA because he did not supervise Plaintiffs or exert any control over Americlean's day-to-day operations. (*See* Johnson's Mot. 5 (citing *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986))). Plaintiffs argue

Johnson's position is based on old case law, and under more recent precedent — which Plaintiffs argue "shifts the focus" from the old operational control test — courts now look more "to culpability in how the FLSA violation came to be." (Pls.' Resp. 7 (citing *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013) ("*Lamonica*"))). In accordance with *Lamonica*, Plaintiffs argue Johnson may be personally liable because the asserted FLSA violations stem from Americlean's "subcontractor payment system," and Johnson personally put that policy in place. (*Id.* 9). Nevertheless, Johnson insists: 1) reliance on *Lamonica* is misplaced because it did not change the fundamental test and is factually distinguishable (*see* Johnson's Reply 5–6); 2) courts still look to operational control, and Plaintiffs mischaracterize Johnson's complete lack of involvement in Americlean's day-to-day operations (*see id.* 2–5); and 3) Johnson cannot be held liable based on these facts, as demonstrated by the closer factual analogue of *Santos v. Cuba Tropical, Inc.*, 829 F. Supp. 2d 1304 (S.D. Fla. 2011) (*see* Johnson's Reply 6–8).

No party cites a persuasively analogous case.[2] Moreover, the Court disagrees with Plaintiffs' assertion *Lamonica* created a new test for individual liability or even shifts the focus of existing precedent. Rather, *Lamonica* clarified the long-standing test for individual liability under the FLSA — day-to-day operational control or direct responsibility for supervision — can be satisfied indirectly. *See Lamonica*, 711 F.3d at 1313 ("[W]e must clarify the degree and type of operational control that will support individual liability under the FLSA." (alteration added)).

---

[2] For example, *Santos* involved a former, yet still nominal, owner who had suffered a heart attack, turned over the business to his son, and could not even name the managers in charge of the business. *See generally* 829 F. Supp. 2d 1304. Here, Johnson delegated authority directly to his single, hand-picked supervisor. Similarly, *Lamonica* is distinguishable because it involved purported employers who were substantially involved in daily operations, personally visiting work sites; issuing instructions to employees; and not only directly determining employee pay (or lack thereof), but even taking out a loan in their individual capacity and personally paying employees when the defendant corporation itself became unable to do so. (*See* Johnson's Reply 5–6 (discussing *Lamonica*, 711 F.3d at 1313–14)). These indicia of operational control are completely absent from this case.

As Plaintiffs concede, *Lamonica* did not overturn any Eleventh Circuit precedent (*see* Pls.' Resp. 7), so the test still revolves around whether an individual defendant had sufficient operational or supervisory control over a plaintiff-employee to be personally liable.

Plaintiffs *allege* Johnson "ran the day-to-day operations of the Corporate Defendant for the relevant time period and was responsible for paying Plaintiffs' wages for the relevant time period and controlled Plaintiffs' work and schedule and was therefore Plaintiff's employer." (Am. Compl. ¶ 4). But Plaintiffs' Response concedes Johnson wholly delegated his operational authority to Arreaga (*see* Pls.' Resp. 9), so it is clear Johnson's direct involvement in day-to-day operations is insufficient to trigger personal liability. That is why Plaintiffs now emphasize Johnson's indirect control, and pursue their alternate allegation of individual liability: "Johnson was so involved in the managerial and financial affairs of Defendant Corporation that, [sic] to the extent that he would be liable under the FLSA for any violations of wage law committed by Defendant Corporation, even if the Individual Defendant was not found to be the employer of Plaintiffs." (Am. Compl. ¶ 5 (capitalization omitted)). Yet that final clause demonstrates Plaintiffs' misunderstanding of *Lamonica*: indirect control, which again is not a new test, does not establish liability in the absence of an employment relationship. Rather, it clarifies a qualifying employment relationship may exist as a result of indirect operational control. *See* 711 F.3d at 1313. And on that central issue, Johnson is correct Plaintiffs mischaracterize his involvement. (*See* Johnson's Reply 2–7).

Plaintiffs repeatedly assert Johnson "implements" — in the present tense — Americlean's subcontractor business model. (*See*, *e.g.*, Pls.' Resp. 9). But even drawing all inferences in Plaintiffs' favor, the undisputed evidence shows this implementation occurred decades ago when Johnson first started Americlean, and control of nearly every facet of daily

6

operations has been delegated to Arreaga since his hiring soon after Americlean's incorporation in 1996. (*See generally* Deposition of James Johnson ("Johnson Deposition") [ECF No. 54-1]). Nonetheless, Plaintiffs maintain Johnson is personally liable as "the man behind the curtain," "the architect of the FLSA violation" (Pls.' Resp. 9), and the "originator of the business model which is followed by Mr. Arreaga" (Pls.' SMF Resp. ¶ 10). Plaintiffs' heavy focus on liability deriving from the contractor business model itself, while understandably appealing for its precedential value based on the model's ubiquity in the local cleaning industry, is unavailing. Framed this way, the argument fails because the purported FLSA violation does not inherently flow from the contractor business model; obviously it is possible to pay a contractor minimum wage.[3]

Nevertheless, buried within this fallacious argument lies a thin, colorable theory of individual liability. Johnson states "Mr. Arreaga determines the rates of pay for cleaners based on his personal experience." (Declaration of James S. Johnson [ECF No. 50-1] ¶ 6). Plaintiffs concede "James S. Johnson does not set a particular employee's pay; however, he sets the policies and systems which do set the pay." (Pls.' SMF Resp. ¶ 11). This latter point, much narrower than Plaintiffs' grand "architect" theory based on the overarching business model, is what could trigger individual liability. If Johnson's pay policies narrowed Arreaga's discretion such as to *preclude* minimum wage payment, Johnson could be personally liable based on his

---

[3] For example, if Plaintiffs' effective wages were above minimum wage, they would have no minimum wage cause of action regardless of whether Defendants designated and treated them as employees or contractors. In fact, even Melba's claim as a conceded Americlean employee will necessarily fail unless Plaintiffs can prove Raul and Rafaela were Americlean employees too, because while Plaintiffs allege they "were paid an average of $3.65 per hour" (Am. Compl. ¶ 15), there are three of them. If only Melba was an Americlean employee, and the other two were not employed by Defendants in any capacity, Melba's alleged effective wage (then only *voluntarily* split three ways) rises to $10.95 per hour — well in excess of state and federal minimum wage provisions.

indirect control over Plaintiffs' pay; otherwise, the purported FLSA violations flow not from Johnson's policies, but rather Arreaga's discretionary implementation.

The Court cannot rule out that possibility at this time.  Johnson's deposition testimony suggests while Arreaga has discretion to determine individual cleaners' payments, his discretion may fall within limits prescribed by Johnson himself.  (*See*, *e.g.*, Johnson Dep. 21:8 ("Patrick knows how much I offer.")).  Both these limits, and the critical issue of whether a per-square-foot rate within those limits could translate to an effective wage above minimum wage, are unclear from the record.[4]  To prevail in the argument Johnson is individually liable based on his indirect operational control over Plaintiffs' compensation, Plaintiffs ultimately will have to show Johnson's policies limited Arreaga's discretion so as to preclude him from paying Plaintiffs a legal minimum wage.  Given the state of the record on this issue, drawing all inferences in Plaintiffs' favor as the non-moving party, summary judgment is inappropriate.

## IV.  CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion **[ECF No. 51]** is **GRANTED in part** and **DENIED in part**.

2. Johnson's Motion **[ECF No. 50]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 25th day of February, 2016.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[4] A typographical error in the transcript prevents the Court from knowing exactly what the permitted per-square-foot rate range may be.  (*See* Johnson Dep. 21:14).  Regardless, the Court would not be able to calculate an effective wage rate even with that information because the Court does not know how many square feet Plaintiffs were tasked with cleaning, or how long it generally takes to clean a square foot.